## Case No. 5,571a.

### GOODYEAR v. HILLS.

### BACON v. SAME.

[3 Fish. Pat. Cas. 134.] [1]

Supreme Court, District of Columbia. Dec., 1866.

PATENTS—APPLICATION FOR INJUNCTION — VALIDITY—REJECTION OF INVENTOR'S APPLICATION FOR PATENT.

1. The only question arising on an application for injunction is whether the complainant presents an undebatable case.

2. It becomes the duty of the court not only to ascertain the validity of the patent, with such certainty as to advise the court that it ought to interpose its writ of injunction, but also to inquire whether the defendant is in contumacy of that right.

3. The law makers have admonished inventors and the public that if before an application they suffer more than two years to elapse in the use of an invention, they shall absolutely forfeit all right and title thereto.

4. As to any laches by which the application may be followed, the inventor is left under the dominion of common law principles.

[Cited in Bevin v. East Hampton Bell Co., Case No. 1,379.]

5. When his application is rejected, the judgment of condemnation by the patent office advertises to the country, at least, that he stands in no better position than before the applica-

---

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

tion was made. The country is advised that at that stage of the invention he has no rights.

6. More especially is he himself advised by rejection, of his want of right, for he is a party to the proceedings, and more immediately damnified.

7. The rejection of the application would, at least, be regarded, in the logic of equity, as a notice to him to proceed with diligence to traverse and reverse the judgment of the office.

8. Whether a patent applied for 1855, rejected in 1856, allowed to sleep for eight years, during which time the invention went into public use, and revived by a new application in 1864, is valid, quaere.

9. Where an application was made for a provisional injunction under two patents, in two suits, on behalf of the same equitable owner, and there appeared to be a community of interest, advice and policy between them, so that an injunction upon one of them which was valid, might be made to serve the purpose of an injunction upon the other, the validity of which was doubtful. *Held*, that, while an injunction under the doubtful patent was refused, the defendant would be allowed to tender reasonable security for payment for such use as he might make of the valid invention.

In equity. There were two motions, made in the supreme court of the District of Columbia, for provisional injunctions to restrain the defendant from infringing two separate patents, the legal title to which was vested in different parties, who held both in trust for the use of the Goodyear Dental Vulcanite Company. The first patent [No. 8,075] was for an "improvement in the manufacture of India rubber," granted to Nelson Goodyear, May 6, 1851, and reissued to Henry B. Goodyear, his administrator, May 18, 1858, in two divisions numbered 556 and 557 respectively. The second patent [No. 43,009] was for an "improvement in artificial gums and palates," granted to John A. Cummings, June 7, 1864, and more particularly referred to in the case of Dental Vulcanite Co. v. Wetherbee [Case No. 3,810]. The defendant was a dentist in the city of Washington who had manufactured plates or palates for artificial teeth of hard rubber, thus, as it was claimed, infringing the patents of Goodyear for the product and process (Goodyear v. New York Gutta Percha Co. [Id. 5,580], and the patent of Cummings for the special application of hard rubber to artificial gums and palates.

A. Pollok and J. J. Coombs, for complainant.

W. F. Mattingly and J. H. Bradley, for defendant.

CARTTER, J. Henry B. Goodyear, as the administrator of Nelson Goodyear's estate, and as the patentee, and Samuel A. Duncan, as the sole licensee of the right to use the invention for dental purposes, filed their bill against Thomas O. Hills, and ask the court to interpose its temporary injunction against the use of the process of Goodyear's invention, and of the material resulting from that process (called, I believe, technically, "vulcanite"), so far as that material and process are appropriated to dental purposes. The merits of the controversy, as discussed before me, are resolved first into the consideration of the question whether the proper parties are made complainants here; and secondly, granting the validity of this patent, whether the patentee has forfeited his rights to it by a dedication to the public.

These are the only questions seriously raised, although something has been said in regard to the validity of the patent. The subject of the patent has, under a modification, traveled through more than the lifetime of a patent, involving expenses which, it is said, left the inventor without reward, in consideration of which fact the commissioner of patents very properly, as far as is shown to me, granted an extension of seven years. It is this extension of the patent which is now before the court. This patent has been sufficiently in controversy in the courts and otherwise to have become an established fact. Its integrity, as appears in the proof, has been tested by an expenditure of over two hundred thousand dollars, and by repeated adjudications in the courts, through a period contemporaneous with the life of the original patentee. This last grant is made to the inventor's descendants, in consideration of the fact that the original patentee never realized any benefit from his genius; and this corresponds to the very familiar history of many inventors—that the beneficiaries of the generation in which the privilege is granted are never to see the fruition of their labors. As far as the validity of this patent is concerned, there can be no question; there ought to be no litigation.

On the question of forfeiture, or dedication to the public, I will simply remark, that so far from the evidence showing any laches, on the part of the owners of the patent, which would work such forfeiture or dedication, to my mind it shows the most persevering diligence on their part in asserting and maintaining their rights under the patent. But this patent does not stand alone; and it is impossible to consider this case in its full merits, without reference to another, which is now traveling parallel with it. I refer to the case of Josiah Bacon against Thomas O. Hills. Bacon is the assignee of one Cummings, and the trustee of a company now in process of formation, a company at present existing in its elements alone, and waiting for the sovereignty of Massachusetts to give it a legal being, which company has become virtually the assignee of both patents, but an assignee in such wise as not to take the legal title to these patents from the respective patentees and their assignees, as the case appears to me. In that regard I think the proper parties, so far as I am advised, are before the court, whatever may be the explanations of the case made before it reaches a final hearing. Under this marriage of the two

patents in the interest of the company, common agents are appointed, and a common demand is made upon the dental profession for tribute. What the necessity of this may be, it is unnecessary to discuss. I can conceive that the motive may be to make the more meritorious support the defects of the less meritorious patent—that the patent of shorter life may be made to vitalize that having in prospect a longer period of duration. But whatever may be the motive for the union, the union exists, and, as I view it, is material to the consideration of the case.

The Cummings patent, upon which I am now commenting, dates its existence, as nearly as I can recollect the facts, from the brief argument presented to me, to a caveat filed as early as 1852. A formal application for a patent was presented in 1855, but rejected in 1856, when it took a long sleep. It was granted in 1864, having been revived a short time previous, after its sleep of eight years under an adverse judgment of the patent office. It is further in evidence before me informally, and all the testimony has been presented by affidavits, that during this winter season of the invention, it went into common use. The dental profession adopted it with great reluctance, beginning, perhaps, as far back as 1854, and employing it reluctantly from that time to 1864, inclusive. Since this period it has come into general use, on account of its economy, and, so far as appears from the proof, its great superiority in every respect. Indeed, while the case was under discussion, the superior advantages of this invention were so glowingly painted by the learned counsel that I was almost inclined to reject the old molars of fifty-five years for a set of artificial teeth, although the former were ancient friends. The argument seemed to represent that it would be a luxury to exchange a set of nature's dentistry for this modern substitute. This transition from an invention to universal use, occupied a period of rest between 1856 and the application which preceded the final granting of the patent, I believe in the year 1864. The impression, at least, was made upon my mind, that eight years intervened between the rejection and the final issue of the patent. The question presented in this connection is, whether the patentee acquiring title under these circumstances, is brought within the protection of the law.

It is not necessary for me in this stage of the case and upon the motion now pending, to determine what would be my ultimate judgment in regard to this point. The only question arising upon an application for an injunction, it appears to me, is whether the complainant presents an undebatable case. The validity of this patent comes here endorsed by the decision of the circuit court for the district of Massachusetts, where Judge Clifford seems to have had no difficulty whatever in pronouncing that this interval of eight years formed no impediment to the rights of the patentee. But the conclusion is much clearer to my mind than the logic which leads to it. The opinion proceeds upon the hypothesis that no interval of effort, no relaxation of diligence, can follow an application for a patent, and that the application, as soon as alive, continues to live by virtue of the momentum which first put it in operation. That may be so; but I confess I do not see it clearly. The law makers have admonished inventors and the public, that if before an application they suffer more than two years to elapse in the use of the invention, they shall absolutely forfeit all right and title thereto. It is true that the legislative admonition relates to the period preceding the application. But it appears to me, as far as the court can be guided by its own judgment, that the inventor is left under the dominion of common law principles, in regard to any laches by which the application may be followed. Is it the law that because an inventor files his application, which is refused by the office, he may sleep upon his rights indefinitely, and that at any period in his lifetime, or that of his representatives, the application may be revived, as against the public? I think not. Prima facie, I think he would have to show a reason why he should be so permitted. The judgment of condemnation by the office, advertises to the country, at least, that he stands in no better position than before the application was made. The country is advised, by the deliberation of the only tribunal provided by law for the ascertainment, at that stage of the invention, of his right, that he has none. More especially is he himself advised of that fact, for he is a party to the proceedings, and more immediately damnified by the rejection of the application. That rejection would at least be regarded, in the logic of equity, as a notice to him to proceed with diligence to traverse and reverse the judgment of the office. I can not say, on the brief reflection that I have been able to give this case, under the pressure of the labor that has been upon me, during the period of the hearing, that this patentee has an invulnerable patent. And while I do not wish to anticipate the judgment of a further and fuller investigation, which will supervene the pendency of this suit, yet I am prepared to say that at this stage, upon this motion, the case presented is not one to call for the intervention of an injunction.

So much for the two cases in severalty. I ought here to remark that I have come to this conclusion with some misgivings; for this patent has not only been confirmed, in its integrity, by the decision of a circuit court in the case to which I have already referred but has received the sanction of Judge Giles, of Baltimore, upon a motion precisely similar to the one I have before me. I have listened to these opinions with the

deference due to the distinguished gentlemen by whom they were delivered; but I confess that I am in fault in not being able to agree with either of them.

This disposes, imperfectly, of my view of the condition of these two parties. And still the question recurs, what is my duty with reference to the issue of an injunction? It will be perceived by this reasoning, that I believe in the vitality of one of these patents as an indubitable proposition; and that there is, in my mind, such doubt as to the other, as not to allow it the force of a conclusive right, and therefore as not to entitle it to the benefit of an injunction. The whole embarrassment that follows grows out of the community of interest and the community of advice, between the two parties, and the community of police for the preservation of the interests of the two parties. They are represented by common counsel, by common agents, they have common interests; and still the legal interest is held in severalty. The respondent in these cases has informally expressed a willingness to regulate his use of the substance protected by the Goodyear patent, and thus become tributary to that patent; while, at the same time, he protests that he will not recognize the validity of the patent of Cummings. If the respondent had presented this readiness of compliance in a tangible form, which called upon the complainants, in rejecting it, to reject a certainty; if he had reduced his avowals, informally made, to definiteness, distinctly pledging a continued compliance with the terms of the Goodyear patent, I should have no hesitation about the matter. For it becomes a duty, in the consideration of this question, not only to ascertain the validity of the Goodyear patent with such certainty as to advise the court that it ought to interpose its writ of injunction, but also to inquire whether the respondent is in contumacy of that right; whether he is seeking to defeat and defraud the patentee of his property, or of a just consideration for its use. While I would be able to satisfy my own mind in regard to that fact, in case a definite tender had been made in a form of responsibility, I am embarrassed by the vague and indefinite character of the propositions presented, and must regulate my present judgment accordingly. Without consuming any more time, or repeating any more of the case, I think the parties will understand the position of my judgment, in announcing the result, which is, a denial of an injunction under the Cummings patent, and the granting of a temporary injunction in favor of the Goodyear patent, subject to removal at any time when the party defendant shall present a tangible tender of reasonable security for payment to the complainants for such use as may be made of the invention, or that which is the equivalent of such security; which is to be judged of by the chancellor, when a motion is made to dissolve the injunction.